United States Court of Appeals,

Fifth Circuit.

Nos. 92-4079, 92-4250.

Larry PEMBROKE, et al., Plaintiffs-Appellants,

v.

WOOD COUNTY, TEXAS, et al., Defendants-Appellees.

Jan. 20, 1993.

Appeal from the United States District Court For the Eastern District of Texas.

Before POLITZ, Chief Judge, and WISDOM and WIENER, Circuit Judges.

WISDOM, Circuit Judge:

Two prisoners filed an action under 42 U.S.C. § 1983 alleging denial of access to the courts, improper classification of prisoners, punitive isolation without due process, improper restriction of reading materials, inadequate medical care, and additional generally unacceptable prison conditions. The district court certified a class of all present and future inmates. The individual prisoners' claims were tried to a jury while the class claims were simultaneously tried to the court. After the jury rendered a verdict for the state denying the individual prisoners any recovery, the court denied the class claims as well. The plaintiff class appealed this decision and in an unpublished opinion this Court vacated the district court's decision and remanded the case for entry of findings of fact and conclusions of law.[1] Upon remand the court entered its findings and once again denied the class claims. In a later proceeding, the court denied the plaintiff's request for prevailing party status and reasonable attorney's fees and costs. We affirm in part, reverse in part, and remand with instructions to award reasonable attorney's fees and costs to the plaintiffs.

I

This suit was originally instituted by Wood County Jail prisoners Dennis McKeever and Trent Commander. The suit was filed in December 1985 under 42 U.S.C. § 1983 alleging that the

_____

[1]*Pembroke v. Wood County,* 880 F.2d 411 (5th Cir.1989).

conditions at the prison violated their constitutional rights.[2]  The plaintiffs sought damages individually and sought declaratory and injunctive relief on behalf of the entire class of inmates.  The district court certified a class of all present and future inmates confined and to be confined in the Wood County Jail.  The class waived its damages claim and proceeded to trial seeking only declaratory and injunctive relief.

The conditions at the Wood County Jail at the time suit was filed in 1985 were indeed substandard.  According to the district court's factual findings, the classification system was not properly implemented.  As a result, pretrial detainees were not separated from convicted felons.  In addition, the court found that "reading materials" consisted of one bible and class members were denied access to the county law library for a period of seven months.  Finally the court found that one of the named plaintiffs had been placed in isolation for punitive purposes without due process protections.

These were not the only problems at the jail.  The facility was in a general state of disarray.  Administration of the facility had been delegated to untrained staff members;  repeated state standards violations were never recorded or addressed;  medical attention was erratic;  and the plumbing was in a constant state of disrepair resulting in raw sewage overflowing the showers and toilets for months at a time.  The jail was always in semi-darkness in violation of state lighting standards.  Visitation privileges were arbitrarily restricted.  The prisoners were sometimes sprayed with mace as a form of punishment.

By the time the case came to trial in February 1988, most if not all of the complained of conditions had been remedied.  A prison administrator, hired in January 1987 two years *after* the suit was filed, instituted a total reform of the facility.  The prisoners were properly classified, given access to the county law library and reading materials, proper procedural safeguards were instituted regarding the use of punitive isolation, and the other conditions complained of were corrected.  In addition, the county began the construction of a new prison facility.  The prisoners were moved to

---

[2]Specifically, the complaint alleged that the conditions at the jail violated rights guaranteed by the First, Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.

this facility and the old jail was closed in 1988 after the trial. Of the two original individual plaintiffs, only McKeever showed up for trial. McKeever's claims were tried to a jury while the class claims were tried simultaneously to the court. The court submitted McKeever's individual claims to the jury by a general charge, keeping the class claims for declaratory relief under advisement pending the jury's verdict.

The court instructed the jury to find for McKeever only if it determined that, under the totality of the circumstances, the plaintiff had been unconstitutionally confined in the jail. After the charge was made, and during the time allotted for counsel to object to the charge, the trial judge clarified his charge to facilitate review by this Court. He stated in his charge to the jury that "[t]he court has found on the points concerning the legal material, concerning the matter of reason for the single cell isolation ... [a]nd concerning classification ... reasonable minds could not differ that under the facts of this case, the facts constituted a violation of minimum constitutional standards".[3] In spite of these instructions, the jury returned a verdict in favor of the defendants. This verdict is not the subject of this appeal, because the individual claims were abandoned by McKeever, who is now deceased. Mr. Pembroke was substituted as the class representative.

In the light of the jury's verdict, the court decided the class claims in favor of the defendants without stating any factual findings or conclusions of law. The plaintiffs[4] appealed this decision. In an unpublished opinion, this Court vacated and remanded for entry of findings of fact and conclusions of law.[5] Upon remand, the court issued its factual findings and conclusions of law and once again denied the class claims. The court then dismissed the case with prejudice and ordered that the class be decertified. The plaintiffs appeal this decision. In addition, in a later proceeding, the court denied the plaintiffs' request for prevailing party status, thus denying their request for reasonable attorney's fees and costs. The plaintiffs appeal this decision as well. The two appeals were consolidated and

---

[3]Record on Appeal, vol. 4, p. 658.

[4]For convenience we sometimes use the term "plaintiffs" to refer to the plaintiffs in the class claim.

[5]*Pembroke v. Wood County,* 880 F.2d 411 (5th Cir.1989).

this appeal followed.

## II

We review a district court's refusal to grant declaratory relief for abuse of discretion.[6] In *Hollis v. Itawamba County Loans,* we stated that "[t]he issue of whether to grant a declaratory judgment is left to the district court's sound discretion to ensure that subsequent events have not ... made declaratory relief inappropriate".[7]

The district court denied declaratory relief based on its finding that the case was moot. The court found that because the jail conditions complained of by the plaintiff were remedied before the case came to trial they did not pose a continuing threat of harm to the class members. Further, based on what it characterized as "good attitudes" on the part of the defendants, the court also concluded that there was no threat that these types of conditions would arise in the future. Relying on *Golden v. Zwickler,*[8] and *United States v. W.T. Grant Co.,*[9] the court reasoned that because the problem was remedied before trial, some danger that the harm would be repeated must exist in order to warrant declaratory relief. In the absence of any such danger, the case is moot. We agree.

The plaintiffs argue that they are entitled to some relief upon the finding of *any* constitutional violation whether or not these conditions existed on the trial date or threaten to recur in the future. They rely on *Green v. Ferrell,*[10] where the Court remanded and suggested that declaratory relief would be an appropriate remedy for unconstitutional prison conditions. This case does not support their argument. In *Green,* the complained of conditions were still in existence when the case came

---

[6]*Torch, Inc. v. LeBlanc,* 947 F.2d 193, 194 (5th Cir.1991); *Hollis v. Itawamba County Loans,* 657 F.2d 746, 750 (5th Cir.1981).

[7]*Hollis,* 657 F.2d at 750.

[8]394 U.S. 103, 108-09, 89 S.Ct. 956, 959-60, 22 L.Ed.2d 113 (1969).

[9]345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

[10]801 F.2d 765 (5th Cir.1986) *rehearing denied* 807 F.2d 995 (5th Cir.1986).

to trial.[11]  In addition, the plaintiffs also rely on *Morrow v. Harwell*,[12] arguing that even where the defendants demonstrate a willingness to comply with constitutional standards in the future, declaratory relief is still proper.  This case is distinguishable from the present case for the same reason we distinguished *Green*.  Although the County changed some of its unconstitutional practices before the appeal was heard, they were still in existence when the case reached the magistrate.[13]  The Court noted that declaratory relief would have been proper even had the conditions been remedied before the case was tried, yet it by no means held that such relief is required.  Such a determination is left to the discretion of the trial court.

The proper standard for review is abuse of discretion.  The record does not support a finding of abuse.  The plaintiffs do not contend that any of the complained of conditions existed at the time the case came to trial.  The plaintiffs argue that the defendants could easily return to their unconstitutional practices in the future.  Yet, they offer no evidence to support this allegation.  The district court described the defendants as having "good attitudes" and found no danger of the poor conditions recurring in the future.  The fact finder is in the best position to judge the credibility of witnesses and we will reverse its finding only if it is clearly erroneous.  The court's findings on this point are adequately supported by the record and are not clearly erroneous.  We therefore affirm its determination that the case was moot and we agree with its decision to deny declaratory relief.

Although we do not find error in the court's decision to deny declaratory relief we cannot turn a blind eye to the conditions at the Wood County Jail as they existed prior to the trial date.  The district court found that McKeever was placed in isolation for five days for the purpose of punishment, without due process protections.  The court made no finding that this was a class-wide problem;  however, the record reflects uncontroverted evidence that punitive isolation, without due process protections, was commonly used.  The use of punitive isolation without affording due process

---

[11]*Id.*

[12]768 F.2d 619 (5th Cir.1985).

[13]*Id.* at 626-27.

is unacceptable and violates the 14th Amendment.[14]

The court also found that class members were denied access to the county library for a period of seven (7) months. In its jury charge for McKeever's individual claim, the court stated that "on the points concerning the legal material ... reasonable minds could not differ that under the facts of this case, the facts constituted a violation of minimum constitutional standards".[15] We agree. Even if the court had not openly characterized this condition as a constitutional violation, it would still constitute a violation according to the precedent in this Circuit. In *Morrow v. Harwell,* this Court applied the Supreme Court's mandate that prisons supply "adequate law libraries or adequate assistance from persons trained in the law" in order to comply with the prisoner's constitutional right to meaningful access to the courts.[16] The Court held that access to a weekly bookmobile coupled with circumscribed assistance from law students was insufficient.[17] Certainly no access to any library or any legal assistance violates the *Bounds* standard.

Finally, the court found that the classification system was not fully utilized, before the filing of the lawsuit in that pretrial detainees were not segregated from convicted felons. The court drew no legal conclusion from these facts in reference to the class claims; however, the court instructed the jury regarding McKeever's individual claim that the "classification [system] ... constituted a violation of minimum constitutional standards".[18] We agree. It is clear from the record and reflected in the district court's findings that there was absolutely no classification system in place when the suit was filed. Under *Jones v. Diamond,*[19] failure to adequately classify inmates is a violation of the

---

[14]*Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974).

[15]Record on Appeal, vol. 4, p. 658.

[16]*Morrow,* 768 F.2d at 622 (quoting *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977)).

[17]*Id.*

[18]Record on Appeal, vol. 4, p. 658.

[19]636 F.2d 1364, 1374 (5th Cir.1981) (en banc), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981), *overruled on other grounds, International Woodworkers of America v. Champion International Corporation,* 790 F.2d 1174 (5th Cir.1986).

Eighth Amendment's prohibition against cruel and unusual punishment.

The plaintiff class also complains of several additional conditions that existed in the jail when they filed suit.[20]  Because they failed to raise these issues in their first appeal, we decline to discuss them at this time.[21]  We do note, however, that the arbitrary restriction of reading materials to one bible without showing a need for such a restriction based on prison security is an unacceptable infringement on the prisoners First Amendment rights.[22]

### III

Plaintiffs contend that the district court erred in denying them prevailing party status.  They argue the conditions of the Wood County Jail were improved as a result of their filing suit.  This fact is undeniable.  Under 42 U.S.C. § 1988 they should receive reasonable costs and attorney's fees.

In *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Board,*[23] this Court held that the plaintiff is entitled to prevailing party status if he establishes two elements: "(1) that the goal of the law suit was achieved, and (2) that the suit itself caused the defendant to remedy the [complained of conditions]".  If the plaintiff can make this prima facie showing, the burden shifts to the defendant to show that its conduct was "wholly gratuitous".[24]

The plaintiffs contend that the purpose of their suit was to improve the conditions of confinement for members of the class.  Conditions were improved by time of trial, but not until after

---

[20]The list of complaints included poor lighting, the presence of raw sewage for extended periods of time, inadequate medical and dental care, arbitrary restrictions on reading materials, arbitrary restrictions on visitation rights, and the use of mace as a punishment.

[21]*See Brooks v. United States,* 757 F.2d 734, 739 (5th Cir.1985).

[22]In *Green v. Ferrell,* this Court held that a jail's prohibition on newspapers and magazines violated the First Amendment.  801 F.2d at 773.  The Supreme Court has recognized a prison's right to infringe on its inmates First Amendment rights.  Such infringement, however, must be "evaluated in light of the central objective of prison administration, safeguarding prison security".  *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).  The district court did not conduct such an evaluation;  however, it noted that the jail officials said that reading materials were a fire hazard.  Under *Green* and *Bell* this reason would not justify the prison's infringement on the plaintiffs' constitutional rights.

[23]919 F.2d 374, 378 (5th Cir.1990).

[24]*Id.*

the plaintiffs filed suit. The substantial improvements noted by the court meet this goal. The defendants counter, contending that the "goal" of the plaintiffs' suit was nothing more than money damages or a declaration by the court that the plaintiff's constitutional rights had been violated. But the class waived any claims for money damages. The defendants would have us believe that the plaintiff class sought merely to have the court declare that their rights had been violated. We reject this argument. The prison conditions for persons confined in Wood County, Texas now pass constitutional muster. The goal of the suit has been accomplished.

Next the plaintiffs must establish that the suit caused the defendants to remedy the prison conditions. Causation is a question of fact and "the district court's answer will stand on appeal unless clearly erroneous".[25]

The district court found that the plaintiffs' suit was not the cause of the improvements in the prison conditions. Although we give great deference to the district court's factual findings, we are "left with the definite and firm conviction that a mistake has been committed"[26] and reverse its finding on this point. The district court relied heavily on the timing of plans for the construction of the new prison in reaching its conclusion. It brushed over the undisputed fact that conditions at the *old* facility were improved drastically immediately following the filing of this suit. No evidence of prior plans to improve conditions at the old facility is in the record. The defendants argue that the improvements were merely incidental to the new administrator's presence. They argue that she was hired solely to aide in the transition from the old facility to the new one and not to improve on the conditions at the old facility. That is a convenient argument, but the truth is that no corrective action was taken until the suit was filed.

Although the plans for a new prison existed before the plaintiffs filed suit, plans for improving of the old facility did not. Even if the primary purpose for hiring the new administrator was to aid

---

[25]*Heath v. Brown,* 858 F.2d 1092, 1094 (5th Cir.1988) (quoting *Heath v. Brown,* 807 F.2d 1229, 1234 (5th Cir.1987)).

[26]*Heath,* 858 F.2d at 1094 (quoting *Campos v. City of Baytown,* 840 F.2d 1240, 1243 (5th Cir.1988) (quoting *Anderson v. City of Bessemer,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985))).

in the transition to the new facility, this does not explain why she implemented such extensive reforms of the old facility. It is undisputed that unacceptable conditions in the old Wood County Jail were drastically improved immediately following the filing of this suit. The record supports the inescapable conclusions that these improvements were caused by the plaintiffs' filing suit. We are unwilling to characterize these improvements as mere coincidence.

The plaintiffs have met their burden under the *Associated Builders* test. The goal of their suit was acco mplished as a result of their filing suit and the defendant has failed to show that the improvements were "wholly gratuitous". For this reason, the plaintiffs are entitled to prevailing party status. In accordance with this status, the plaintiffs should receive reasonable attorney's fees and costs.[27]

## IV

We AFFIRM the district court's denial of declaratory relief. We REVERSE the district court's denial of prevailing party status and REMAND for the district court to award the plaintiffs reasonable attorney's fees and costs.

---

[27]We are aware of the recent Supreme Court decision in *Estate of Farrar v. Hobby,* --- U.S. ----, 113 S.Ct. 566, --- L.Ed.2d ---- (1992). *Farrar* dealt with prevailing party status and the award of attorney's fees in the context of nominal damages and is thus distinguishable from the present case. In *Farrar* the Supreme Court stated that to be entitled to attorney's fees, "[w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or settlement.... In short, a plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff". *Id.* at ----, 113 S.Ct. at 573. The Court held that the plaintiff was not entitled to attorney's fees where he had received only a nominal award of one dollar in spite of the fact that he was technically the prevailing party. *Farrar* is clearly distinguishable by the fact that its plaintiffs sought $17 million in compensatory damages whereas the plaintiffs in this case dismissed their damage claims early on and sought prospective remedies only. Unlike *Farrar,* changes in the legal relationship between the plaintiffs and defendants in this case were wrought by the bringing of the litigation itself, not with recovery of monetary damages. Thus, although the plaintiffs received no monetary award, they are still entitled to an award of reasonable attorney's fees.